Good morning. May I please the Court, Daniela Razavi appearing on behalf of Appellant Ketchetan Dominic Kado. I would like to reserve two minutes for rebuttal. The main issue in this case is the IJ's adverse credibility finding. Appellant entered the United States with a crewman's visa on June 13, 1991. The notice to appear in court was issued on May 6, 1997. The IJ denied all applications, asylum, withholding of removal, and relief under the Convention Against Torture on August 26, 2003. The BIA affirmed the IJ's adverse credibility determination on January 27, 2005. And in the BIA's decision, the BIA only affirmed the adverse credibility determination. The BIA did not reach the issue whether if the IJ's adverse credibility determination is erroneous, whether my client would have been able to prove his claim for asylum. This is the pre-Real ID Act case because the Real ID Act only applies to cases filed after May 11, 2005. The heart of the case seems to be this. Your client gave a very detailed description of what happened to him at the hand of the authorities in Fiji, in writing, in his asylum application. But when he got to the stand at the IJ hearing, he described a very serious incident, that he was raped, anally, by police officials, and this was not in his asylum application at all. How should the panel look at that? The panel, I mean, basically, the law with regards to admission is laid by Lopez, Reyes v. INS, Sink v. INS, and Aguilera-Cortez v. INS, where this honorable court held that it is well settled that an applicant's testimony is not, per se, lacking in credibility, simply because it indicates details that are not set forth in the asylum application. With regards to the rape, there's actually additional precedents set by this court. One of them would be in Parmesan v. Ashcroft, where it's basically stated that just because an applicant did not discuss an incident of rape at his first opportunity, which would have been the filing of his asylum application, it still doesn't mean that the applicant is not credible. There is a case which is called Kabide v. Ashcroft, and the details in that case, or the facts in that case, are very similar to the facts in my client's case. In Kabide v. Ashcroft, an Ethiopian woman entered the United States, applied for asylum, but neither in her asylum application nor in her asylum interview did she discuss the rape she had suffered in her home country. And she basically explained that she was too ashamed to discuss it and didn't want to reveal it to anybody. And in this case, the court basically stated that victims of sexual assault do not irredeemably compromise their credibility by failing to report the assault at the first opportunity. My client's rape took place in May 1990. He entered the United States and then in 1992 applied for asylum. That was barely two, two and a half years after the incident occurred. And at this time, he did not reveal the rape to anybody. When his hearing took place in front of the immigration court in 2003, at that point, he had started to realize that it's something he should reveal and talk about. And he's still very hesitant to reveal or talk to anybody else. He revealed it to the court. I don't even believe he revealed it to a doctor who subsequently treated him for an injury or medical condition. He suffered as a result of the rape. The source of the apparent source of the persecution that he suffered, whatever it may have been, was the fact that he was of Japanese descent and he had married a native Fujian. Is that correct? That was one of the aspects. One of it would go to ethnicity. As Your Honor stated correctly, he was of Japanese descent. In the beginning, his family was able to register in the native registry, which according to Fiji law allowed them to own land. In 1996, eventually, his family was removed out of the registry because the native Fijian pushed for changing this rule and they basically took the land away from people who were non-native Fijian. He's no longer married to the Fijian woman, is he? He is remarried to a different person, not to this particular lady at the time when he was in Fiji. His persecution is not just based on his ethnicity. It is also based on his political opinion. He was a member or strongly supported the National Federation Coalition Party in Fiji, which after the 1987 coup was ousted and the Alliance Party, which was predominantly supported by native Fijian, took over. As a result of his support for the National Federation Coalition Party, he suffered persecution because the military, first in 1987 and subsequently in 1990, detained him and questioned him. He was a sailor. Out of that profession, he traveled outside of Fiji and the government imputed on him that since he supported the National Coalition Federation Party, he must have supported the Indu Fijians, which the native Fijian believed would try to do a countercoup to gain power again and that he would know about weapons shipments and things of that nature. Do you want to save some time for rebuttal? Yes. Okay. We'll hear from the Attorney General at this time. Good morning, and may it please the Court. I'm Paul Fiorino for the Respondent. I wanted to pick up on an observation that Judge Hawkins made, that at the heart of this case there's a very glaring omission that the petitioner made when he first sat down to fill out his I-589 in 1992 and when he testified in court in 2003. The omission of the rape is a glaring inconsistency. It's beyond a minor detail. It itself should be an entirely new basis of persecution, and when the Court reviews this, it's supposed to ask whether or not this is the Court's adverse credibility decision supported by the record, and we'd say on the basis of the rape alone it is. I wanted to distinguish Paramahsani and Kibiti because there's several important facts in this case that distinguish that. In Paramahsani, I believe that the alien was interviewed in an airport and did not mention the rape at the airport but mentioned it subsequently, and the Court said that you can't really put a lot of weight on what's said in an airport interview because of the nature of its very fleeting and so forth and so on. In this case, the alien, Mr. Cato, was supposedly working with an attorney and preparing a written statement under the guidance of that attorney, and so he had time to, the attorney said to him, if you look on page 122 of the record, just write down and say what happened. Okay. So he completely omitted the rape. Now, his explanation for that is that he was suffering psychological trauma. Well, there's two problems with that. Number one, he also claims that he reported his rape to the International Human Rights Society two months after the rape allegedly happened. Sui sponte, he went and reported that. So that would cut against his assertion that he was psychologically traumatized for reporting the rape. And secondly, there's no medical evidence in the record that he suffered from any type of PTSD sufficient to prevent him from having disclosed the rape beforehand. So in respect to Kibbity, I would say also that the facts of this case are different because of the fact that he reported the rape two months afterwards. The motives for his arrest also are cited by the board, and they go to the heart of his claim, and they support the adverse credibility finding. And his I-589, which is the application for asylum in his personal statement, he said that he was arrested because he was accused of destroying the Fijian cultural heritage and that he was using his ethnicity, using his wife to gain access to land. But when he testified, it was a completely different claim. The claim shifted entirely. He testified that he was believed to have aided his political opponents by procuring weapons. Again, his attorney said to him, tell me what happened. He gets one version of the story. When he testifies, he gets another version of the story. Now, it's true that either of these could, if they are true, possibly support a claim for asylum, but we don't even get to that point. This Court is assessing his credibility. And when there are, as we said, glaring omissions and inconsistencies that are in the record and go to the heart of his claim, it's sufficient for the Court to affirm and uphold the adverse credibility finding of the court. Sotomayor, he claims there are two incidents, one in 1987 and the other in May of 1990. Didn't the application have to do with the May 1990 incident alone, in terms of whether he gave two different reasons? I'm not sure I followed. Two different motivations. I think so, yes. But I think he was talking about — I think I view the record a little bit more broadly than that, why is the Fijian government or why is the military interested in him? And he gives what we think is two different reasons. Well, he was apprehended — this is his claim — in 1987 and detained for six hours because of the ethnicity matter, if you will, the fact that he was married to a native Fijian, and apparently the locals didn't like that. But the 1990 incident was after he became a sailor, and apparently they suspected him of supplying arms or something like that to an insurgency. Is that right? That, I think, is his claim, yes. So — So it doesn't sound like that's inconsistent. If that is what the record says, then that would not be inconsistent. But there are other inconsistencies there. But also with respect to the 1987 detention, you mentioned that he was detained for six hours. But if you look at his personal statement on pages, I think, 197 to 200 of the record, he's talking about a 36-hour detention. Six, 36, big difference. Inconsistency goes to the heart of his claim, and it's sufficient to support the court's finding. And there's others in there, too. You don't have to use all your time if you don't want to. I understand that, Your Honor. If the Court has no further questions, we would concede. I don't see any. Thanks for coming in today. I appreciate it. Rebubble? I would like to address the issue raised that he supposedly reported the rape to the Human Rights Commission. Would you push the mic close to you? Yes. Speak right into it. Sure. Thank you very much. Sorry. Sorry about that. I would like to address the issue about him supposedly reporting the rape to the Human Rights Association. If we read the record correctly, he testified in open court on direct and, I believe, on cross-examination, he was asked again. He went to the Human Rights Association, put his name and his phone number down, but no further detail of what he was trying to complain or talk about. He was never contacted by the Human Rights Association and never had a chance to actually talk about it. Maybe that would have helped him to go through it and report it in his asylum application earlier. That never occurred. He was never contacted. And by the time he left, he never heard from anybody back in Fiji. His 1987 detention is the one which had been omitted from his original application. And as Your Honor stated correctly, the different motive for the arrest go to the different time period. In 1987, at that time, he was married to a native Fijian. Thereafter, he was not because she left him in Elope with an army officer. I would like to address the point that my client was represented by an attorney when he filed his asylum application. That is correct. But I did some additional research last night, and I came across a case which this court ruled upon, which is Smoling Canova v. Gonzalez. And in this case, this court basically stated that asylum forms filled out by people who are unable to retain counsel should be read charitably, especially when it comes to the absence of a comprehensive and thorough account of past instances of persecution. I believe that this ruling — Is this case in your brief? No. And I should have — I just came across it last night. I did not — What's the date of it? What's the date of the case? What year? The date of the case. It's a 2005 case. Okay. When the argument's concluded, if you'll see the deputy clerk, and there's a form you can fill out with the citation, and she will give a copy of it to the lawyer for the attorney general? I will do so.  Thank you. And if you'd like to respond, counsel, to the citation of that case, we'll give you five days to do so from the date of the hearing, letter brief, not to exceed two pages. Okay. Anything else? Yeah. I wanted to basically say that I think that ruling in that case should be extended to this particular case. We look at the application and his declaration. It's written in the client's handwriting. Yeah, the application is typed, but he's basically claiming, and he explained that to the immigration judge in court, that this attorney didn't do anything for him. He basically just told him, all right, something down, whatever you think is important. And as we can see, there's really nothing in the original application or his declaration which makes sense or accurately accounts for what he later recalled and testified to in court. So I just would argue that that case should apply to attorneys who subsequently, after filing and representing the client, have been disbarred for incompetence. Okay. Thank you for your argument. One of the advantages that Petitioner has in this setting, because it's your burden, is that you get to speak last, but when you cite a case that's not in your briefs, you've given that advantage over to the government.  Yeah. Thank you for your argument. The case that's argued will be submitted for decision.
judges: Hawkins, Thomas, Korman